IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

---

| | |
|---|---|
| JARREN GENDREAU | : |
| | : |
| vs. | : Case No:1:14-cv-00337 |
| | : |
| JOSUE D. CANARIO, | : |
| In his capacity as Chief of Police of | : |
| the Bristol Police Department; and the | : |
| Town of Bristol, Rhode Island. | : |
| | : |

---

### PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, Jarren Gendreau, by and through undersigned counsel, and complain of Defendants as follows:

### THE PARTIES

1. Plaintiff Jarren Gendreau ("Gendreau" or "Plaintiff") is a natural person and a citizen of the United States and of the State of Rhode Island and Providence Plantations ("Rhode Island"), residing in Bristol, Rhode Island.

2. Defendant Town of Bristol, Rhode Island, is a duly chartered municipality organized under the laws of the State of Rhode Island.

3. Defendant Josue D. Canario, is the Chief of Police of the Town of Bristol, Rhode Island.

### JURISDICTION AND VENUE

1

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1367, 2201, 2202 and 42 U.S.C. § 1983.

5. Venue lies in this Court Pursuant to 28 U.S.C. § 1391

## STATEMENT OF FACTS

*Background*

6. The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

7. The Second Amendment is incorporated as against the states through the Fourteenth Amendment, such that Defendants cannot, under color of law, deprive Plaintiffs of their right to keep and bear arms.

8. The Second Amendment guarantees the right of law-abiding individuals to publicly carry operational handguns for self-defense.

9. States retain the ability to regulate the manner of carrying handguns, prohibit the carrying of handguns in specific, narrowly defined sensitive places, prohibit the carrying of arms that are not within the scope of Second Amendment protection, and disqualify specific, particularly dangerous individuals from carrying handguns.

10. States may not completely ban the carrying of handguns for self-defense, deny individuals the right to carry handguns in non-sensitive places, deprive individuals of the right to carry handguns in an arbitrary and capricious manner, or impose regulations on the right to carry handguns that are inconsistent with the Second Amendment.

11. Almost all states basically respect the Second Amendment rights to carry a handgun for self-defense, in that the right to carry a handgun is either unregulated, or regulated to the extent that individuals passing a background check and completing a gun safety course are, as a matter of course, licensed to carry handguns. In some of these states, a license to carry a handgun is required only if the handgun is concealed.

12. Article I, Section 22 of the Constitution of the State of Rhode Island provides "The right of the people to keep and bear arms shall not be infringed."

13. Rhode Island law generally criminalizes the carrying of concealed firearms without a permit. RIGL 1956 § 11-47-8(a) (". . . Every person violating the provision of this section shall, upon conviction, be punished by imprisonment for not less than one nor more than ten (10) years, or by a fine up to ten thousand dollars ($10,000), or both . . ."). With very few exceptions, Rhode Island generally prohibits the open, public carrying of loaded handguns for self-defense. *Id.*

14. Rhode Island law allows the carrying of loaded handguns in public, for self-defense, upon issuance of a permit to carry a concealed handgun pursuant to either Rhode Island General Laws, § 11-47-11 or § 11-47-18.

15. All applicants seeking a license to carry a handgun under § 11-47-11, must demonstrate proof of ability, § 11-47-15; § 11-47-16.

16. Rhode Island offers two potential avenues to seek a concealed carry permit. The Attorney General, is empowered, at his discretion, under § 11-47-18 to issue pistol permits ". . . upon a proper showing of need . . . ." In contrast to the permit available through the Attorney General, the General Laws provide in pertinent part that:

> The licensing authorities of any city or town shall, upon application of any person twenty-one (21) years of age or over having a bona fide residence or place of business within the city or town, or of any person twenty-one (21) years of age or over having a bona fide residence within the United States and a license or permit to carry a pistol or revolver concealed upon his or her person issued by the authorities of any other state or subdivision of the United States, issue a license or permit to the person to carry concealed upon his or her person a pistol or revolver everywhere within this state for four (4) years from date of issue, if it appears that the applicant has good reason to fear an injury to his or her person or property or has any other proper reason for carrying a pistol or revolver, and that he or she is a suitable person to be so licensed. § 11-47-11(a).

17. Defendant Josue D. Canario, in his capacity as Chief of Police of the Bristol Police Department is the licensing authority for the town of Bristol, Rhode Island.

18. In Rhode Island, firearms law is the exclusive providence of the State. The General Assembly has expressly preempted the field. See § 11-47-58 ("The control of firearms, ammunition, or their component parts regarding their ownership, possession, transportation, carrying, transfer, sale, purchase, purchase delay, licensing, registration, and taxation shall rest solely with the state, except as otherwise provided in this chapter.")

19. In practice, the issuance of permits varies widely among Rhode Island jurisdictions. Some licensing authorities almost never issue handgun carry permits, others issue permits only occasionally, and yet others liberally issue permits to most if not all law-abiding applicants.

20. In addition to the state statutory framework, Bristol itself has developed a policy (the "Policy") to guide the processing of concealed carry permit applications. See Town of Bristol Weapons Carry Permit Packet, Ex. 1, Ap. 1-11.

21. After receiving a completed application, along with a non-refundable payment of

$100.00[1] the Bristol Police Department conducts a background check that "may include a check of court records and other sources for pending criminal cases, restraining orders and/or discrepancies in the applicant's background, including prior history or mental illness." *Id.* at 4.

22. According to the Policy "[t]he Town of Bristol will not issue a pistol permit to any applicant who is prohibited from possessing or carrying a firearm under any State of Federal Law (e.g (sic) 18 U.S. (sic) 922(g)) or pursuant to any court order." *Id.*

23. According to the Policy, after the background check is done, the Chief proceeds to consider a showing of need. *Id.* "If this initial check does not disqualify the applicant from obtaining a pistol permit, the Town of Bristol shall review the application on an individual basis to determine whether there has been proper showing of need, as required by the statute, and whether the applicant is qualified." *Id.*

24. The Policy, in a section captioned "Proper Showing of Need" first explains the approach taken to making a determination:

> In considering each individual application for a pistol permit, the
> Town of Bristol must determine whether or not the applicant has
> demonstrated a proper showing of need to carry a loaded firearm in
> public, and consider the individual's demonstration of skill and
> responsibility to safely carry and use a firearm in compliance with
> all State, Federal and local laws. Because a loaded, concealed
> firearm in untrained hands presents danger to the public and the
> applicant, the Town of Bristol must consider countervailing risks to
> the public in assessing need. *Id.*

25. The policy then goes on to set out the "factors" considered in making the determination:

> While there cannot be any set formula or criteria to limit or restrict
> the Town of Bristol's discretion to issue or deny a concealed

---

[1] It is noteworthy that this fee is ultra vires and not authorized by the firearms act. See R.I. Gen Laws § 11-47-12.

5

weapon license, the Town will afford a hearing to each applicant before ruling on the application. The Town of Bristol considers the following factors in assessing an applicant's proper showing of need.

1. Has the applicant demonstrated a specific articulable risk to life, limb or property? If so, has the applicant demonstrated how a pistol permit will decrease the risk?

2. Can the applicant readily alter his or her conduct, or undertake reasonable measures other than carrying a firearm, to decrease the danger to life, limb or property?

3. Are there means of protection available to the applicant other than the possession of a firearm that will alleviate the risk to his or her person or property?

4. Has the applicant demonstrated the skill, training and ability to properly use a firearm in accordance with Rhode Island laws?

5. Has the applicant presented a plan to properly secure the firearm so that it does not fall into unauthorized hands?

6. How greatly will the possession of a firearm by the applicant increase the risk of harm to the applicant or to the public?

7. Has the applicant demonstrated that he or she will not use the firearm for an unlawful or improper purpose, and that he or she has not used a firearm for n (sic) unlawful or improper purpose in the past?

8. Does past unlawful, dangerous or violent conduct of the applicant justify denial of the license by the Town even if it is not sufficient to disqualify the applicant as a matter of law from possessing a firearm?

9. Has a protective order been issued relative to the applicant pursuant to chapter 15-5, chapter 15-15, or chapter 8-8.1 of the general laws?

10. Are other factors deemed lawful and appropriate by the Town to demonstrate that the applicant is or is not a person suitable to possess a firearm in public.

*Id.* at 4-5.

26. According to the policy, "[a]fter assessing the above factors, the Town shall grant or deny the concealed weapon permit, and in the case of a denial, shall state its reasons therefore in writing." *Id.* at 4-5.

27. Gendreau followed the process laid out in the Bristol Policy and applied for a Concealed Carry Permit in the spring of 2012.

28. In his Application, Gendreau explained that he was seeking a permit for three reasons. First, Gendreau explained that he is a firearms collector with a collection, at the time, worth in excess of $4,000. Next Gendreau explained that he was employed as a security guard and was seeking expanded employment opportunities that only a concealed weapons permit (CCW) could provide, including those in Massachusetts which would require a further application and permit as well. Finally, Gendreau explained that he often transports large sums of money, and that he needs a CCW for personal protection and self-defense.

29. In early May, Gendreau participated in an "interview" with a board appointed by the Chief of Police to conduct the hearing called for by the Town's Policy.

30. The hearing was not noticed to the Secretary of State or to the applicant as a hearing on his application in violation of the Rhode Island Open Meeting Act ("OMA") § 42-46-1, et. seq.

31. During the hearing Gendreau was asked about his reasons for desiring a permit and reiterated those reasons contained in his letter. *Tr. of Interview* Ap. 19-27, 19. Of particular focus was Gendreau's desire to obtain a Massachusetts permit, leading to the following colloquy:

> BOARD MEMBER 2: If they were to hire you in Massachusetts, for this position, that requires you to have a firearm and your a Rhode Island resident. Are they going to tell you, we're not going to hire you because you have to have a firearm, a concealed weapons permit but you first have to go get one from Rhode Island. I . . . does, when he said does it get around the issue?
> MR. GENDREAU: No, like I said, I after I apply to this I'm going to apply to the Massachusetts State Police, who issues their out of state, non-resident concealed to carry permits for class A LTCs as they call it there its not truly concealed carry.
> BOARD MEMBER 2: Are you saying Massachusetts, Massachusetts will not issue a permit to a non resident . . .
> MR. GENDREAU: Unless they have it in their home state.
> BOARD MEMBER 2: Even if you get hired?
> MR. GENDREAU: Even if you get hired, you must have it in your home state. yep that's necessary, mandatory, no ifs, ands or buts.
> BOARD MEMBER 2: (unintelligible) . . . ask the question.
> MR. GENDREAU: I'm sorry yeah.
> BOARD MEMBER 2: That's interesting because most, I would say this heavily weighs on need and if you have a need in Massachusetts and not a need in Rhode Island how can they make you get one?
> MR. GENDREAU: Well it doesn't really weigh on need in Rhode Island for the town anyway, I believe it's 11-47-11 it doesn't say a showing of need, its says has a reason to believe they will, could be under great bodily harm which, for the reasons listed, I think its fair to say I fare reason to believe that during such activities I run the risk great bodily harm and then its a shall issue.
> BOARD MEMBER 2: OK and you never read proper showing of need under that?
> MR. GENDREAU: That is under the AG which you guys are not, you are the town official which is 11-47-11. I'm pretty sure. I think your. . .
>
> * * *
>
> *Id.* at 25:19 – 27:4.

32. After also focusing on the desire for expanded employment opportunities and a Massachusetts permit, another member asked for "an example when you would draw, draw a weapon?" to which Gendreau responded:

> Well do you want to give me a scenario or just an example. Well, I'd never draw a weapon unless one, I can't retreat; two I feel my life is threatened and in immediate physical harm and three, the fear I'm going to be killed. There is no other reason to draw a weapon, no

8

> brandishing, its all bad, unless you can't run and you fear for you life and that your going to die. There is no point to even drawing it besides under those situations.

*Id.* at 23:7-14. At no other time during the interview did anyone on the Board ever pose a question going to Gendreau's suitability.

33. Gendreau is a suitable person for a concealed carry permit pursuant to G.L. § 11-47-11(a).

34. Self-defense, firearms collecting, and increased employment opportunities are proper purposes for a concealed carry permit pursuant to G.L. § 11-47-11(a).

35. On June 26, 2012, the Chief sent a short two paragraph letter to the Petitioner stating in pertinent part:

> After carefully reviewing the application and receiving a recommendation from the panel which interviewed you with regards to your application for a concealed weapon permit, it is with regret that I advise you that I feel that you do not meet the criteria outlined in 11-47-11 of the General Laws of Rhode Island as amended, as well as Bristol Police Department's Guidelines which would justify me issuing you a concealed weapons permit.

Letter from Josue D. Canario, Chief of Police to Jarren R. Gendreau, Ex. D, Ap. 28.

36. On or about February 25, 2013 plaintiff Gendreau filed a Petition for Certiorari with the Rhode Island Supreme Court seeking review of the decision denying his concealed carry permit application arguing, inter alia, that the decision denying the application was insufficiently detailed, and that it violated the petitioner's constitutional and statutory rights under the laws of the United States and the State of Rhode island.

37. On September 18, 2013, the Rhode Island Supreme Court granted the plaintiff's petition for certiorari and quashed the original decision denying the plaintiff's concealed carry permit application.

38. The order of the Rhode island supreme court, which is attached hereto as Exhibit E allowed the defendants ninety days within which to render a new decision. The decision also granted the plaintiff leave to amend his petition for certiorari to include any disputes with the new decision without the need to file an additional petition for review or incur the cost of a filing fee for the new petition, if filed within thirty days of the new decision.

39. After its decision was quashed, the defendants rendered a new decision again denying the plaintiff's application. A copy of the new decision is attached hereto as Exhibit F.

40. The decision is dated October 16, 2013 and indicates that it was sent to counsel for the plaintiff. However, counsel for plaintiff was never sent a copy of the second decision from until November 21, more than thirty days after it was rendered. *Id*.

**COUNT I – VIOLATION OF THE SECOND AMENDMENT TO THE UNITED STATES CONSTITUTION**

41. Plaintiff realleges and incorporates the foregoing paragraphs 1 - 40 as though fully set forth herein.

42. The decision denying the plaintiff's application denies, abridges or otherwise infringes his rights under the second amendment and damages plaintiff in violation of 42 U.S.C. § 1983.

43. The Town of Bristol policy requiring a "proper showing of need" and the defendants application of the same, is ultra-vires, illegal, and unconstitutional and deprives the

plaintiff of his Second and fourteenth amendment rights and damages plaintiff in violation of 42 U.S.C. § 1983.

44. Plaintiff's injuries are irreparable because Plaintiff is entitled to enjoy his constitutional rights in fact.

## COUNT II – VIOLATION OF ARTICLE 1 § 22 OF THE CONSTITUTION OF THE STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

45. Plaintiff realleges and incorporates the foregoing paragraphs 1 - 40 as though fully set forth herein.

46. The decision denying the plaintiff's application denies, abridges or otherwise infringes his rights under the Article 1, §22 of the Constitution of the State of Rhode Island.

47. The Town of Bristol policy requiring a "proper showing of need" and the defendants application of the same, is ultra-vires, illegal, and unconstitutional and deprives the plaintiff of his rights under the Article 1, §22 of the Constitution of the State of Rhode.

48. Island Plaintiff's injuries are irreparable because Plaintiff is entitled to enjoy his constitutional rights in fact.

## COUNT III – VIOLATION OF RHODE ISLAND GENERAL LAWS § 11-47-11(a).

49. Plaintiff realleges and incorporates the foregoing paragraphs 1 - 40 as though fully set forth herein.

50. The decision denying the plaintiff's application denies, abridges or otherwise infringes his rights under R.I.G.L. § 11-47-11(a).

51. The Town of Bristol policy requiring a "proper showing of need" and other factors not required by R.I.G.L. § 11-47-11(a) is ultra-vires, illegal, and deprives the plaintiff of his rights under R.I.G.L. § 11-47-11(a).

52. Island Plaintiff's injuries are irreparable because Plaintiff is entitled to enjoy his statutory rights in fact.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

i. declaratory judgment that the Bristol Policy is facially invalid under the Second and Fourteenth Amendments to the United States Constitution, and the constitution and laws of the State of Rhode Island because they vest uncontrolled discretion in the hands of state officials to grant or deny Permit to Carry applications and to grant, deny, limit, or restrict Permits to Carry;

ii. declaratory judgment that the Bristol Policy is facially invalid under the Second and Fourteenth Amendments to the United States Constitution, and the constitution and laws of the State of Rhode Island because they condition the approval of Permit to Carry applications and the issuance of Permits to Carry upon, inter alia, a "proper showing of need";

iii. iii. an injunction directing Chief Canario to approve the application of Mr. Gendreau for a concealed carry permit;

iv. an injunction permanently restraining Defendant Chief Canario, and his officers, agents, servants, employees, successors, and all persons in active concert or participation with them who receive notice of this injunction,

       from enforcing the Handgun Permit Laws so as to deny, restrict, or limit Permits to Carry or applications for same for any reason other than those reasons specifically codified in the statutes and regulations of the State of Rhode Island;

v. an injunction permanently restraining Defendant Chief Canario, and his officers, agents, servants, employees, successors, and all persons in active concert or participation with them who receive notice of this injunction, from enforcing the Handgun Permit Laws so as to deny, restrict, or limit Permits to Carry or applications for same on the ground that an applicant does not have "good reason to fear an injury" when that applicant otherwise indicates a desire to carry a handgun for self-defense;

vi. such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and,

vii. attorney's fees and costs pursuant to 42 U.S.C. § 1988 and all applicable state analogues.

### Jury Demand

Plaintiff demands a trial by Jury on all questions so triable.

Dated: 9/21/2015

Plaintiff, Jarren Ray Gendreau,
By and through his Attorney,

/s/Matthew L. Fabisch
_____
Matthew L. Fabisch, Esquire (8017)
664 Pearl Street
Brockton, MA 02301

13

(Tel) 401-324-9344
(Fax) 401-354-7883
Email: Fabisch@Fabischlaw.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of September, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Michael A. Ursillo    mikeursillo@utrlaw.com, gwendolynbruno@utrlaw.com

s/Matthew L. Fabisch