IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JARREN GENDREAU, : | |
|     Plaintiff : | |
| : | |
| v. : | C.A. No.: 1:14-CV-00337-M-LDA |
| : | |
| TOWN OF BRISTOL, et. al., : | |
|     Defendants : | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

This case stems from the denial of Plaintiff Jarren Gendreau's ("Gendreau") concealed carry weapon permit ("the Permit") application ("the Application") by the Chief of Police, Josue D. Canario ("Chief Canario"), for the Town of Bristol, Rhode Island ("the Town"). As discussed more fully below, because no dispute of material fact exists, this Court should grant summary judgment in favor of Defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**II.   FACTS AND TRAVEL**

    **A.   History and Background of the Rhode Island Firearms Act**

In 1927, the Rhode Island General Assembly passed the Firearms Act. P.L. 1927, ch. 1052. The current version of the Firearms Act is a comprehensive regulatory scheme governing the sale, possession, and use of various weapons, along with criminal penalties for violation. R.I. Gen. Laws § 11-47-1 to -63. Among these provisions are two sections governing the licensure of concealed pistols and revolvers. R.I. Gen. Laws § 11-47-11, 18. The first provides that municipal governments "shall issue" a license to their residents upon meeting several criteria, and the second

provides that the state Attorney General "may issue" a license upon meeting certain, somewhat different, criteria. Id. The former, which is applicable in the case at bar, reads in pertinent part:

> The licensing authorities of any city or town shall . . . issue a license or permit to the [applicant] to carry concealed upon his or her person a pistol or revolver everywhere within this state . . . if it appears that the applicant has good reason to fear an injury to his or her person or property or has any other proper reason for carrying a pistol or revolver, and that he or she is a suitable person to be so licensed.

R.I. Gen. Laws § 11-47-11.

Pursuant to § 11-47-11, if the applicant is deemed "suitable," there are two paths to demonstrating eligibility for a concealed weapon permit: the applicant must demonstrate that they have either (1) "good reason to fear an injury to his or her person or property," or (2) that they have "any other proper reason" to be so licensed. R.I. Gen. Laws § 11-47-11(a). The General Assembly tied the "reason" requirement to obtain a permit to an individual's fear of injury to their person or property, which is a high standard to meet. Id. The Rhode Island Firearms Act affords the local licensing authorities broad discretion to determine if an applicant for a permit is "suitable," and if the applicant has a "proper reason" to carry a concealed firearm. See R.I. Gen. Laws § 11-47-11.

### B. Gendreau's Application and Procedural Posture

Gendreau applied for the Permit on or about February 23, 2012. Gendreau's Permit application is attached hereto and herein incorporated as **Exhibit A**. In his application, Gendreau set forth three reasons why he claimed he "has good reason to fear an injury to his or her person or property or has any other proper reason for carrying a pistol or revolver." R.I. Gen. Laws § 11-47-11. Gendreau asserted that: (1) he is an "avid firearms collector with over $4,000.00 invested in both firearms and firearms accessories;" (2) he "occasionally deposit[s] large sums of money for [his] father, who owns an apartment complex and a curtain store located in Fall River" and

with whom he "occasionally travel[s] . . . during business tractions;" and (3) he is "actively seeking employment in the security field." **Ex. A**. at 7.

On May 1, 2012, a panel appointed by Chief Canario conducted an interview with Gendreau in accordance with the Town's regulations. A transcript of the interview is attached hereto and herein incorporated as **Exhibit B**. The panel recommended that Chief Canario deny Gendreau's Application. In its recommendation, the panel suggested that the request be reviewed again if Gendreau obtained a letter from his employer indicating that he needed a Permit for his position. See Memorandum from Patrolman John Nappi to Chief Canario dated May 3, 2012, attached hereto and herein incorporated as **Exhibit C** at 1, 2. It should be noted that the panel recommended approving two of the three applications reviewed by the panel on the day of Gendreau's interview. Id. After considering the panel's recommendation, on June 26, 2012, Chief Canario notified Gendreau in writing that his Application was denied. See Decision letter from Chief Canario to Jarren R. Gendreau dated June 26, 2012, attached hereto and herein incorporated as **Exhibit D**.

Following the denial, Gendreau filed a petition for a writ of certiorari to the Rhode Island Supreme Court on February 25, 2013. The Court granted Gendreau's petition on September 18, 2013. The Court determined that the letter Chief Canario sent to Gendreau did not adequately describe the reasons for denial of the Application. The Court ordered Chief Canario to clarify his reasoning and provide Gendreau a new decision articulating the factual basis for the denial. See Order of the Rhode Island Supreme Court, dated September 18, 2013, attached hereto and herein incorporated as **Exhibit E**. The Rhode Island Supreme Court further stated that it "shall retain jurisdiction of this mater," and gave explicit instructions to Gendreau should he still be aggrieved by Chief Canario's amended decision: "[Gendreau], if aggrieved by [Chief Canario's amended]

- 4 -

decision, may invoke the Court's jurisdiction by filing an amended writ of certiorari in this same docket within thirty (30) days of the issuance of [Chief Canario's] decision." **Ex. E** at 2.

On October 16, 2013, Chief Canario issued an amended decision, which is attached hereto and herein incorporated as **Exhibit F**. Gendreau did not file an amended petition for certiorari by November 15, 2013 as ordered by the Rhode Island Supreme Court. In fact, more than two years later, Gendreau has still not amended his petition. According to the Gendreau v. Canario docket sheet, attached hereto and herein incorporated as **Exhibit G**, Gendreau's case has since been closed. More than eight months after abandoning his first appeal, Gendreau filed this action claiming federal and state constitutional issues previously raised before the Rhode Island Supreme Court.

### III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure reads in pertinent part as follows: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Id. at 250-51 (citations omitted). Where the parties do not genuinely dispute the material facts but dispute only the law, as is the case here, summary judgment is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

IV. ARGUMENT

    A. Jurisdiction

        **1. The Rhode Island Supreme Court has previously granted certiorari to Gendreau on the matters raised in Counts II and III, has stated it shall "retain jurisdiction in this matter," and was the proper forum for these matters to be decided.**

The issues raised in Counts II and III of the complaint are state matters that Gendreau has already brought before the Rhode Island Supreme Court, which stated: "This Court shall retain jurisdiction of this matter." **Ex. E** at 2. As this Court would be attempting to apply the precedent of the Rhode Island Supreme Court in its evaluation of these claims, and that court has stated unambiguously that it intended to interpret the Firearms Act of its own accord, this Court should permit the Rhode Island Supreme Court to do so. By abandoning his appeal at the Rhode Island Supreme Court, Gendreau forfeited his right to judicial review. The Rhode Island Supreme Court has been clear on the appeal process for denied applications under R.I. Gen. Laws § 11-47-11, having stated: "unless a right of appeal is specifically provided by statute, the proper procedure for denial by a town council of a license application is by writ of certiorari to the Supreme Court." Mosby v. Devine, 851 A.2d 1031, 1048 (R.I. 2004).

Given the previous procedural history and the nature of the claims, this Court should decline to extend supplemental jurisdiction over the Rhode Island-specific issues raised by Counts II and III of the complaint. In Gadomski v. Tavares—the only other decision reported thus far interpreting R.I. Gen. Laws § 11-47-11—the Rhode Island Supreme Court articulated its standard of review for this type of appeal as follows: "[I]t is well settled that "[o]ur review of a case on certiorari is limited to an examination of the record to determine if an error of law has been committed." 113 A.3d 387, 389 (R.I. 2015). This is a deferential standard identical to that employed for appeals from other administrative agencies. See Town of Richmond v. Wawaloam

Reservation, Inc., 850 A.2d 924, 933 (R.I. 2004). As such, deference should be given to findings of fact that are supported by "substantial evidence" in the record. Lischio v. Zoning Bd. of Review of Town of N. Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003). Substantial evidence is "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Id.

### 2. Gendreau's claims are barred by res judicata.

In Rhode Island, res judicata attaches to the decisions of administrative agencies that act in a quasi-judicial capacity. See Wawaloam Reservation, Inc., 850 A.2d at 933. Agencies act in a "quasi-judicial" capacity when they provide the parties "substantially the same rights as those available in a court of law, such as the opportunity to present evidence, to assert legal claims and defenses, and to appeal from an adverse decision." Id. In Huntley v. State, the Rhode Island Supreme Court held that res judicata applied in a similar situation to the case at bar, although the forums were reversed. 63 A.3d 526, 532 (R.I. 2013). In Huntley, the plaintiff had filed a pro se complaint in this Court, alleging employment discrimination against the State of Rhode Island. Before being legally permitted to file her lawsuit, she first needed a "right to sue" letter from the Rhode Island Commission for Human Rights. Id. Some ten months after the case was dismissed, when she received the right to sue letter and was represented by counsel, she re-filed her claim in Providence Superior Court. Id. The Rhode Island Supreme Court held that "[t]he doctrine of res judicata bars the relitigation of all issues that were tried or might have been tried in an earlier action. In essence, the doctrine . . . serves as an absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in an earlier action." Id. The Rhode Island Supreme Court also held that "[t]he principle underlying the rule of res judicata is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually

ought not to have another chance to do so. This principle serves the twin aims of both judicial efficiency and finality." Id. The Rhode Island Supreme Court also said that "[l]itigation is publicly funded dispute resolution, and the public has a right to expect that the resources of the judicial system not be wasted. The use of res judicata reflects confidence in the judicial system—one opportunity to litigate a claim or an issue suffices to ensure each party of her day in court." Id. (quoting Richard D. Freer, Introduction to Civil Procedure § 11.1 at 512 (2006)). Accordingly, the Rhode Island Supreme Court affirmed the Superior Court's dismissal.

As the Rhode Island Supreme Court treats appeals under the Firearms Act with the same standard of review as any other administrative appeal, it would follow that res judicata would similarly apply. See Gadomski, 113 A.3d at 389; Huntley, 63 A.3d at 532. Here, by abandoning his appeal to the Rhode Island Supreme Court, Gendreau accepted Chief Canario's decision as a final decision on the merits. See Wawaloam Reservation, Inc., 850 A.2d at 933. Also, as Gendreau had the opportunity to have his "day in court," and since he had the "chance to litigate a claim before an appropriate tribunal," he "ought not to have another chance to do so." See Huntley, 63 A.3d at 532. As such, the claims in Counts II and III should be dismissed. As res judicata applies to all claims "that a party raised or could have raised in the previous proceeding," Count I, which stems from the same facts between the same parties, should also be dismissed. See Wawaloam Reservation, Inc., 850 A.2d at 932.

> **B. Because the United States Supreme Court has upheld restrictions on concealed carry as being presumptively constitutional, Gendreau's Second Amendment rights were not violated.**

In District of Columbia v. Heller, the United States Supreme Court declared longstanding prohibitions on gun ownership, including prohibitions on concealed carry, to be lawful. See 554 U.S. 570, 626 (2008). The Court stated as follows:

> "Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." Id. (citations omitted).

Heller confirmed that the Second Amendment means that the government cannot prohibit the ownership of certain types of guns for protection in one's home. Id. at 635. This constitutional right has been extended no further. See id. at 626-27.

Applying Heller, the First Circuit stated as follows: "[a]s examples of 'longstanding' restrictions that were 'presumptively lawful' under the Second Amendment, the Court listed: (1) laws prohibiting the carrying of concealed weapons . . . . These restrictions, as well as others similarly rooted in history, were left intact by the Second Amendment and by Heller." U.S. v. Rene E., 583 F.3d 8, 12 (1st Cir. 2009). Three years later, the First Circuit Court of Appeals explained in Hightower v. City of Boston that "[w]e have interpreted this portion of Heller [*supra*] as stating that laws prohibiting the carrying of concealed weapons are an example of longstanding restrictions that are presumptively lawful under the Second Amendment." 693 F.3d 61, 73 (1st Cir. 2012). (internal quotation marks, brackets, and citations omitted). Plaintiff's brief does not cite to a single First Circuit case post-Heller that interprets this passage. While, as Plaintiff points out, some circuits have found a more expansive right, the First Circuit has not, and this Court is bound by its precedent.

In fact, a majority of circuits to consider this issue have ruled similarly to the First Circuit that this passage of Heller permits restrictions—or in some cases, outright bans—on concealed carry. See, e.g., Drake v. Filko, 724 F.3d 426, 434 (3d Cir. 2013); Kachalsky v. Cty. of Westchester, 701 F.3d 81, 96-97 (2d Cir. 2012); United States v. Masciandaro, 638 F.3d 458, 466

(4th Cir. 2011); Peterson v. Martinez, 707 F.3d 1197, 1210-11 (10th Cir. 2013) (holding that "the Second Amendment does not confer a right to carry concealed weapons."); see also 79 Am. Jur. 2d Weapons and Firearms § 5.

Here, in paragraph 43 of his complaint, Gendreau claims that the Town and Chief Canario are infringing on his right to bear arms insofar as requiring a "proper showing of need" violates the Second Amendment. Gendreau's argument ignores Supreme Court precedent stating that restrictions on concealed carry are presumptively valid, as well as the First Circuit's binding precedent that further supports the legislature's right to restrict concealed carry. See Heller, 554 U.S. at 626; Hightower, 693 F.3d at 73; Rene E., 583 F.3d at 12. The right to bear arms does not exist in the absolute sense claimed by Gendreau; it may be the subject of restrictions including specifically, those on concealed carry. See Heller, 554 U.S. at 626; Hightower, 693 F.3d at 73; Rene E., 583 F.3d at 12. It is impossible to violate, abridge, or burden a right that does not exist, and there simply is no right to unrestricted concealed carry under the Second Amendment. See Heller, 554 U.S. at 626; Hightower, 693 F.3d at 73; Rene E., 583 F.3d at 12.

Moreover, Plaintiff claims that the Town and Chief Canario are attempting to claim "carte blanche" authority in making determinations regarding concealed carry permits, when by his own statements, that is clearly not the case. See Plaintiff's Memorandum at 33.  By creating and implementing a policy governing the "proper reason" requirement, the Town has placed reasonable limits on its own discretion. The statute requires an applicant to show a "proper reason" to obtain a concealed carry license. R.I. Gen. Laws § 11-47-11. With no definition included in the statutory scheme and no guidance as to what qualifies as a "proper reason," other than the preceding clause anchoring the reason requirement to a risk of physical harm to person or property, it is the role of the licensing authority to exercise its discretion to determine what reasons are proper. See id. Had

there been no policy in place, and no guidelines made available, it would be far more likely for an arbitrary decision to be rendered. Here, the Town promulgated rules to provide for transparency for issuing these permits. If the General Assembly did not intend for the licensing authorities to determine what reasons were "proper," they would have defined "proper reason[s]" in the statute. See id. As restrictions on concealed carry are presumptively lawful, requiring a proper reason is well within the plenary power of the Legislature, and by their enactment of § 11-47-11, delegated to the local licensing authority. See id.; Heller, 554 U.S. at 626.

Plaintiff claims that firearms law is preempted by statute and is not within the scope of the Town's authority. Plaintiff's Brief at 2. Plaintiff ignores, however, that the preemption statue specifically states that "[t]he control of firearms, ammunition, or their component parts regarding their ownership, possession, transportation, carrying, transfer, sale, purchase, purchase delay, licensing, registration, and taxation shall rest solely with the state, **except as otherwise provided in this chapter**." R.I. Gen. Laws § 11-47-58 (emphasis added). Section 11-47-11 clearly gives discretion to the local licensing authorities. See R.I. Gen. Laws § 11-47-11; Gadomski, 113 A.3d 387, at 390; Mosby, 851 A.2d at 1048. This is precisely the type of situation that would fall under the exception to the preemption rule in § 11-47-58. Section 11-47-11 would be in direct conflict with § 11-47-58 if the preemption clause precluded the local licensing authorities from exercising discretion.

    **C.** **This Court does not have subject matter jurisdiction as to Counts II and III of the complaint and is able to reach them only via supplemental jurisdiction; however, as Count I fails, this Court should decline to extend supplemental jurisdiction to Counts II and III.**

The jurisdiction of United States federal courts is not without limit. U.S. Const. art. III, § 2. Courts must have subject matter jurisdiction over an issue to hear a case. Id.; 28 U.S.C. §§ 1251-1630. In cases where there is a prayer for relief from a federal controversy in addition to a related

non-federal controversy over which the Court would otherwise not have subject matter jurisdiction, the court may optionally exercise supplemental jurisdiction over the matter:

> "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . . The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the claim raises a novel or complex issue of State law, . . . [or] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367.

The First Circuit has further identified circumstances under which the district courts should decline to extend supplemental jurisdiction:

> "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Rivera v. Murphy, 979 F.2d 259, 264-65 (1st Cir. 1992).

**1. Counts II and III raise novel issues of State law, and the Rhode Island Supreme Court is the proper body to decide those issues.**

The Rhode Island Supreme Court has not ruled definitively on what qualifies as a "proper reason" under R.I. Gen. Laws § 11-47-11. Gendreau's claim otherwise relies solely on dicta in a footnote in Gadomski that states the petitioner in that case "may" have shown a proper reason for a Permit. 113 A.3d at 391 n.5. The Gadomski court's ruling was essentially identical to the Rhode Island Supreme Court's order to Chief Canario after granting Gendreau's petition for certiorari: the applicant must be provided with the factual basis for the denial of the Permit. Compare **Ex. E**, with Gadomski, 113 A.3d at 392. The Court did not squarely rule on whether Gadomski had

demonstrated a proper reason. Gadomski, 113 A.3d at 392. Chief Canario provided Gendreau with the factual basis for denial on October 16, 2013. **Ex. F**. As Gendreau failed to file an amended petition for certiorari by November 15, 2013, per the Rhode Island Supreme Court's order, his case was closed, and he forfeited his right to appeal.

The Rhode Island Supreme Court will now wait for a new, and proper, appeal to be filed via petition for a writ of certiorari in order to interpret R.I. Gen. Laws § 11-47-11. As the question of law posed here has not yet been answered by the Rhode Island Supreme Court, and Gendreau seeks more than just the application of settled law, this Court should decline to extend supplemental jurisdiction over Counts II and III of the complaint.

> **D. Defendants' decision did not violate Article 22 of the Rhode Island Constitution as there is no constitutional or statutory right to carry a concealed weapon in Rhode Island.**

In Mosby, the Rhode Island Supreme Court interpreted for the first time the meaning of the "keep and bear arms" provision of the Rhode Island Constitution. R.I. Const. art I, § 22; Mosby, 851 A.2d at 1043. The Court reasoned:

> "We discern no jurisprudential support in this state for the dissent's conclusion that the term 'bear arms' extends beyond the military context. . . . Although we conclude that the 'bear arms' language of art. 1, sec. 22 is employed in the military context, we also recognize an individual right flowing to the people to keep and bear arms. However, . . . we are of the opinion that, when viewed in its entirety, the [Firearms Act] serves to vindicate an individual's right to keep and bear arms and that the licensing scheme set forth in the Firearms Act is reasonable legislative regulation of weapons that falls squarely within the state's police power." Id.

As the Rhode Island Supreme Court has interpreted "bearing arms" to refer to the context of military or militia service, there is no right to carry a concealed weapon in Rhode Island outside of that context, which is not at issue in this case. See id. The Rhode Island Supreme Court has upheld the right of the people to own firearms within their homes and places of business, and that

right has not been abridged here. Gendreau has not been prevented from owning a firearm, only from carrying it concealed on his person in public. See id.

### E. Defendants' decision did not violate the Firearms Act because the General Assembly gave the Town the ability to establish, within the confines of § 11-47-11, the standards for licensure within its community.

The General Assembly, in enacting § 11-47-11, included a reason requirement for licensure. R.I. Gen. Laws § 11-47-11. The sole example provided as to what constitutes a "proper reason" is whether an applicant "has good reason to fear an injury to his or her person or property." Id. Such a standard is intentionally difficult to meet, as the General Assembly clearly wanted to limit the class of persons who could obtain a concealed carry permit. See id.

Gendreau offered several purported "proper reasons" why he should be licensed under § 11-47-11. **Ex. A**. at 7. Each of Gendreau's reasons are independently flawed and are discussed below.

#### 1. Ownership of a valuable firearms collection is an entirely self-fulfilling criteria, and should not be considered a "proper reason" under § 11-47-11.

Anyone legally able to purchase a firearm is similarly able to purchase multiple firearms. Should a person elect to spend their money, there is no limit on how many firearms one may "collect." Should this Court permit the ownership of multiple firearms as a "proper reason," anyone who can afford to purchase multiple firearms will be able to, in effect, *purchase* a concealed carry permit. There is no support for such a justification within the text or meaning of the statute. See R.I. Gen. Laws § 11-47-11. Furthermore, as a matter of public policy, individuals with greater monetary assets should not be allowed to carry a concealed weapon for no reason other than their ability to spend money on additional firearms. Nowhere in § 11-47-11 is there a suggestion that being a "gun enthusiast" is a proper reason. See R.I. Gen. Laws § 11-47-11.

Gendreau also stated that he regularly transports his firearms to a <u>bona fide</u> gun range in Massachusetts on a weekly basis. **Ex. A** at 14. No action taken by the Town or Chief Canario would prevent Gendreau from carrying otherwise lawfully owned firearms in his vehicle to a shooting range, so long as those firearms are properly secured for transport. <u>See</u> R.I. Gen. Laws § 11-47-10.

> **2. Seeking a uniformed security position cannot be a proper reason for concealed carry licensure under § 11-47-11, as the statute permits only concealed carry, and does not permit open carry, as the permit available under § 11-47-18 does.**

If Gendreau were to be issued a permit under § 11-47-11, he would still be unable to legally carry a firearm visible on his person in a security position. <u>See</u> R.I. Gen. Laws § 11-47-11. Section 11-47-11 reads in pertinent part "[t]he licensing authorities of any city or town shall . . . issue a license or permit to the person to carry **concealed upon his or her person** a pistol or revolver everywhere within this state for four (4) years from date of issue." R.I. Gen. Laws § 11-47-11(a) (emphasis added). Whereas, § 11-47-18, the Attorney General's discretionary permit application authority, provides that "[t]he attorney general may issue a license or permit to any person . . . to carry a pistol or revolver, **whether concealed or not**, upon his or her person upon a proper showing of need." R.I. Gen. Laws § 11-47-18 (a) (emphasis added).

The General Assembly included open carry exclusively within the scope of the Attorney General's licensing statute. <u>Compare</u> R.I. Gen. Laws § 11-47-11(a), <u>with</u> R.I. Gen. Laws § 11-47-18(a). Gendreau is not able to claim an unpermitted use as a "proper reason" under § 11-47-11. If Gendreau seeks the ability to openly carry a firearm for employment purposes, the only option is to seek a permit from the Attorney General. <u>See</u> R.I. Gen. Laws § 11-47-18(a). It is noteworthy that during his interview, Gendreau focused on this issue as the primary reason he sought the

Permit, but conceded that he would need to apply for an open carry permit through the Attorney General to obtain employment in Rhode Island. See **Ex. B** at 4.

Should Gendreau obtain employment in such a capacity where he would be required to carry a concealed weapon and obtained a letter from his employer to that effect, Chief Canario indicated that he would consider a new application from Gendreau at that time. **Ex. C** at 1, 2.

> **3. Occasionally carrying large sums of money is not a de facto "proper reason," and is subject to the discretion of the licensing authority in determining whether the comparative risks posed to the applicant outweigh the risks to public safety by permitting the concealed carry permit.**

The only potentially proper reason Gendreau claimed for needing a permit under § 11-47-11 is that he, on occasion, carries money in furtherance of his father's business interests. **Ex. A**. at 14. However, in this instance a Rhode Island concealed carry permit does not mitigate this danger because the potentially dangerous activities are not conducted within the State of Rhode Island. Id. Gendreau's father owns rental property and a curtain store in Fall River, Massachusetts, and when his father is on vacation, Gendreau "occasionally" manages the business. Id.

While carrying large amounts of money could conceivably give an applicant a "reason to fear an injury to his or her person or property," the frequency with which large sums of money are carried and the surrounding circumstances determine whether that constitutes a "good" reason. See R.I. Gen. Laws § 11-47-11(a). The General Assembly intended for the local licensing authority to weigh the factors to determine the strength of the applicant's reason. See id. A plain reading of the statute affords the local licensing authority the discretion to determine the veracity of the applicant's claim. See id.

Here, Chief Canario evaluated Gendreau's purported "good reason" to fear an injury to his person or property, and concluded that because of the nature, location, and infrequency of the risk,

a concealed carry permit was not warranted in this situation. Such a determination is within the sound discretion of the local licensing authority. See id.

Furthermore, as the danger enumerated by Gendreau is primarily outside the borders of the State of Rhode Island—the only location the permit would allow him to carry a concealed weapon—this reason is facially inadequate to support issuance of a concealed carry permit. See id. The statute permits the bearer of a permit to carry "everywhere within **this** state" Id. (emphasis added). Possessing a Rhode Island permit to carry a concealed weapon does not extend into Massachusetts. Id.; see Mass. Gen. Laws ch. 140, § 131F. If Gendreau were to carry a firearm in his intended manner, he would be violating the concealed carry laws of the Commonwealth of Massachusetts. See Mass. Gen. Laws ch. 269, § 10; Mass. Gen. Laws ch. 140, § 131F.

### 4. If Gendreau has a lawful reason for carrying a concealed firearm in Massachusetts, he must apply to the licensing body therein, and comply with whatever regulations and restrictions Massachusetts places on such permits.

Gendreau has argued that his need for a concealed carry permit stems from desired uses outside the State of Rhode Island, specifically, within the Commonwealth of Massachusetts. **Ex. B** at 2-4. Gendreau claims that to obtain a similar permit in Massachusetts he must first obtain one in Rhode Island. **Ex. A** at 14. Nowhere in § 11-47-11 is the Town or Chief Canario required—or even authorized—to aid a citizen in obtaining a permit in a different state where they may potentially have a proper reason for licensure, when no such reason exists in the area covered by the permit. See R.I. Gen. Laws § 11-47-11.

It appears that Gendreau's actual grievance is with the laws of the Commonwealth of Massachusetts, where he purports to need access to a concealed firearm. That, however, is a matter for a different day and a different court. If Gendreau is aggrieved by the decision of the licensing authority in Massachusetts, he should seek review of that decision in the appropriate venue.

## V. CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion for summary judgment, grant Defendants' motion for summary judgment, and find in favor of Defendants on all counts.

DEFENDANTS,
By and Through Their Attorney,

/s/ Michael A. Ursillo
Michael A. Ursillo, Esq. (2676)
Bristol Town Solicitor
**URSILLO, TEITZ & RITCH, LTD.**
2 Williams Street
Providence, RI 02903
Tel: (401) 331-2222
Fax: (401) 751-2427
Email: mikeursillo@utrlaw.com

- 18 -

## **CERTIFICATION**

      I, the undersigned, hereby certify that on February 5, 2016, I caused a true copy of the within memorandum to be filed electronically with the Court's CM/ECF system with copies electronically forwarded to all counsel of record.

                                                                          /s/ Michael A. Ursillo

*\\SERVER\Share\Bristol\Litigation\Gendreau, Appeal to Supreme Court\Gendreau, Federal District Court\Summary Judgment\SJ Memo 2-5-2016.docx*