UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| **JARREN GENDREAU,** : | |
| Plaintiff : | |
| : | |
| v. : | C.A. No.: 1:14-CV-00337-M-LDA |
| : | |
| **TOWN OF BRISTOL, et. al.,** : | |
| Defendants : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.     **ARGUMENT**

    **A. This matter is not barred by res judicata.**

Defendants assert that the Plaintiff's "abandon[ed] appeal" precludes his suit in the instant matter. But defendants mischaracterize both the nature of judicial review of permitting decisions under R.I. Gen. Laws 11-47-11, and the import of the Rhode Island Supreme Court's order in the prior litigation.

Arguing that Res judicata attaches to the decisions of administrative agencies that act in a quasi-judicial capacity – that is when they provide the parties with "substantially the same rights as those available in a court of law, such as the opportunity to present evidence, to assert legal claims, and defenses, and to appeal from an adverse decision" – Defendants contend that res judicata bars the Plaintiff's claims in this court. *Town of Richmond v. Wawaloam Reservation*, Inc., 850 A. 2d 924, 933 (R.I. 2004). Yet, though Plaintiff was afforded an opportunity to be interviewed, he was not afforded "substantially the same rights as those available in a court of law" in seeking to be issued a permit. These procedural requirements, made applicable to most other administrative actions adjudicated through rhode island administrative agencies by the Rhode

Island Rhode Island Administrative Procedures Act's "contested case"[1] provisions, do not apply to permit decisions. G.L.1956 § 42-35-15, et. seq.; See *Mosby v. Devine*, 851 A. 2d 1031, 1035 (RI 2004). As such a rule of administrative finality does not attach to concealed carry permit decisions. See e.g. *Gadomski* v. *Tavares*, 113 A. 3d 387, 392 (R.I. 2015) (specifically directing the licensing authority in that case to take into account any additional supplemental materials in reaching a decision).

Moreover, even if a rule of administrative finality did apply is would not serve as a res judiciata bar on this action as the Rhode Island Supreme Court's grant of certiorari as to the first decision denying Plaintiff's permit should not be construed to invoke an identity of the issues or the presence of a final judgment. "[R]es judicata operates as an absolute bar to a cause of action [when] there exists `(1) identity of parties, (2) identity of issues and (3) finality of judgment.'" *Rhode Island Student Loan Authority v. NELS, Inc*., 600 A.2d 717, 720 (R.I.1991). When invoked, res judicata, also known as claim or defense preclusion, renders a previous judgment conclusive with respect to any claims or defenses that a party raised or could have raised in the previous proceeding. *See Id*. Furthermore, a plaintiff bringing successive actions against the same defendant can invoke res judicata to preclude the defendant from asserting defenses that were raised or that could have been raised in the first proceeding. 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Civil 2d § 4414 at 344-51 (2002).

Here, admittedly, the Plaintiff's original petition to the Rhode Island Supreme Court sought to have the Chief's decision denying the permit overturned on several theories including the

---

[1] The APA's judicial review provision provides that: "[a]ny person who has exhausted all administrative remedies available to him within the agency, and who is aggrieved by a final order in a contested case is entitled to judicial review under this chapter." Section 42-35-15(a). The APA defines a contested case as "a proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for hearing." Section 42-35-1(c).

inadequacy of the written decision and constitutional arguments. However, the Rhode Island Supreme Court choose grant the petition and quash the original decision based on the inadequacy of the written decision itself, without addressing any of the constitutional claims raised with respect to the first decision denying plaintiff's permit. The language of the order matters, and while the court indicates that it shall retain jurisdiction, it also indicates that the petitioner "*may* invoke the Court's jurisdiction *by filing an amended petition* for writ of certiorari in the same docket within thirty (30) days of the issuance of respondent's decision." *See* Ex. E. (emphasis added). It is an axiomatic principle of statutory construction that the use of the term "may" denotes a permissive, rather than an imperative, condition. *See Quality Court Condominium Association v. Quality Hill Development Corp.*, 641 A.2d 746, 751 (R.I.1994) ("[T]he use of the word `may' rather than the word `shall' indicates a discretionary rather than a mandatory provision.") (citing Carlson v. McLyman, 77 R.I. 177, 182, 74 A.2d 853, 855 (1950) (noting that "the ordinary meaning of the word `may' is permissive and not compulsive")). Importantly, the court's order goes on to specify, "[n]o additional filing fee will be required." Though the Court's order gives leave to the Plaintiff to amend his petition, nothing in the order suggests that the court will take up the amended petition, or address any claims raised therein. Certiorari is not the equivalent of a general right of appeal. "Certiorari is a prerogative writ and its issuance and the accompanying relief it provides are discretionary and not a matter of right. *In re: Little*, 237 A.2d 325, 328 (RI 1968).

Rule 13 of the Rhode Island Supreme Court Rules of Appellate Procedure sets forth the process by which an aggrieved party seeks the issuance of a Writ of Certiorari:

> Rule 13. Extraordinary Writs (a) Petition for Issuance of Writ. Other than for habeas corpus and except where otherwise provided for by statute a proceeding seeking the issuance of an extraordinary writ shall be by petition. The petition shall include (1) a concise statement of the case containing the facts material to consideration

> of the questions presented in sufficient detail as to enable the Supreme Court to determine the desirability of issuance of the writ; (2) a statement setting forth with particularity why the relief sought is not available in any other court, or cannot be had through other appellate processes, including whether a notice of appeal has been filed with the Court and why that is not sufficient; and (3) a copy of any order or opinion which the petitioner seeks to have reviewed and any other parts of the record which may be essential to an understanding of the matters set forth in the petition. A memorandum shall be appended to the petition stating the grounds relied upon by the petitioner, together with citations of the authorities in support thereof. The petitioner shall serve upon all other parties a copy of said petition and memorandum. The petitioner shall file the original and nine (9) copies of the petition and memorandum in the office of the clerk of the Supreme Court and shall pay to the clerk a filing fee of one hundred fifty dollars ($150) per petitioner.

Rhode Island Supreme Court rules also make clear that unlike a denied appeal, the denial of a petition for certiorari does not operate as an adjudication on the merits.

> (e) Order Granting or Denying Petition. Upon the granting or denying of a petition, an appropriate order will be entered and the clerk shall give notice thereof to all parties. . . . A denial of a petition, without more, is not an adjudication on the merits and has no precedential effect, and such action is to be taken as being without prejudice to a further application to this Court or any court for the relief sought.

It follows that a party's choice to decline to invoke the court's jurisdiction over a new administrative decision that results from the court's orders likewise could not operate as an adjudication on the merits. The petition before the Rhode Island Supreme Court related only to the prior decision, not to the Chief's subsequent denial.

*Huntley v. State*, 63 A.3d 526, 532 (R.I. 2013) cited by the Defendants is not controlling. In Huntley, the Plaintiff filed her initial claims for employment discrimination in this Honorable Court, a trial court competent to exercise original jurisdiction over her employment discrimination claims. After this court dismissed Huntley's claims on Defendant's motion she refiled the claims

in the Rhode Island Superior Court. The Rhode Island Supreme Court held that her failure to prosecute her claims in the federal forum precluded her ability to bring the action in the state trial court. In contrast to *Huntley*, Plaintiff had no right to be heard on the claims raised in the complaint filed in this court.

The issue of the closed status on the docket sheet and the court's "retained jurisdiction" are also of no moment to this court's consideration of the Plaintiff's claims. The Rhode Island Supreme Court's choice to retain jurisdiction was designed to accomplish nothing more than offer the Plaintiff an opportunity to seek to amend his petition without incurring the additional expense of another filing fee, and provide a mechanism to ensure that a new decision detailing the chief's rationale was in fact rendered. A review of cases in which the Rhode Island Supreme Court has retained jurisdiction of granted petitions for certiorari reveals an apparent concern about requiring a once aggrieved plaintiff to pay twice to seek the court's discretionary review of administrative action. *See e.g., Cullen v. Town Council of Lincoln*, 850 A. 2d 900, 906 (RI 2004) ("This Court shall retain jurisdiction over the case while the council complies with our basic requirements[]" to submit findings of fact and conclusions of law that can be reviewed); *Cranston Print Works Co. v. City of Cranston*, 684 A. 2d 689 (where municipality has failed to produce a reviewable zoning decision ". . . this Court defers action on the petition for certiorari but will retain jurisdiction during the ninety day period that the case is before the council."). In contrast the court's retention of jurisdiction in cases reviewing judicial action suggests an intent to conduct a further review or issue additional *orders See Cunha v. Carol Cable Co., Inc.*, 634 A. 2d 1171, 1173 (RI 1993) (in a workers compensation case the court directed that "the case is remanded to the Workers' Compensation Court, Appellate Division, with our direction that it remand the case to the trial judge for findings of fact and legal determinations supportive of the decree that was entered. We

retain jurisdiction, and on the completion of these procedures, the matter will be returned for our consideration.") Thus it is clear that if the Rhode Island Supreme Court intended to substantively review the Chief's second decision for any of the constitutional claims plaintiff asserted in his original petition, it could have fashioned an order to do so. Instead, the choice to fashion a permissive order by the Rhode Island Supreme Court left the issue of whether to invoke the court's jurisdiction and seek review by that court or in another forum up to the Plaintiff. Because Plaintiff did not seek to amend his petition before the Rhode Island Supreme Court, its jurisdiction was never invoked and review of the Chief's second decision cannot be barred by res judicata. Accordingly, this Honorable court should find that Plaintiff's claims are not barred by res judicata and proceed to address the merits of his constitutional claims.

### B. The Level of Scrutiny to be applied to permitting decisions in the First Circuit is a question of First Impression.

The Defendants point out that plaintiff fails to cite any First Circuit precedent for his position that the Chief's decision violates Plainitff's Second Amendment rights and seemingly argues that any claim that plaintiff's Second Amendment rights were violated by a licensing decision cannot withstand scrutiny under the First Circuit's decision in *Hightower v. City of Boston*, 693 F. 3d 61, 61 (1st Cir. 2012). But the level of scrutiny to be applied to Second Amendment permitting claims within the First Circuit remains a question of first impression. *See Powell v. Tompkins*, 783 F.3d 332 (1st Cir. 2015) ("[t]his circuit has yet to weigh in on 'the scope of the Second Amendment as to carrying firearms outside the vicinity of the home without any reference to protection of the home.') (internal citation omitted).

*Hightower v. City of Boston*, 693 F. 3d 61, 61 (1st Cir. 2012) cited by the Defendants is not to the contrary. Rather, Hightower stands for the unremarkable proposition that applicants for

concealed carry permits must be truthful in their applications to local licensing authorities. As the Hightower court explained "Hightower attacks many provisions of the statute, but her key focus is on what she contends is the inherent subjectivity of the "suitability" requirement and its inadequacy as a standard. However, Hightower's license was not revoked because of a general finding that she was not "suitable," but rather because of a particular determination that she "completed the application form untruthfully.'" 693 F. 3d 61, 76 (1st Cir. 2012) The Court went on to hold that ". . . the revocation of a firearms license on the basis of providing false information as to the existence of pending complaints or charges on the firearms license application form is not a violation of the Second Amendment in this case." *Id*. Moreover, *Hightower* fails to shed any light on the appropriate level of scrutiny to be applied to Second Amendment claims within the First Circuit.  Explaining that because Hightower's claim "fail[ed] whatever standard of scrutiny is used, even assuming there is some Second Amendment interest in carrying the concealed weapons at issue." The court made clear that it "d[id] not reach the question of what standard of scrutiny applies here" and instead cited with agreement the 4th Circuit's "cautionary holding in *United States v. Masciandaro*, that we should not engage in answering the question of how Heller applies to possession of firearms outside of the home, including as to "what sliding scales of scrutiny might apply." . . .  As he said, the whole matter is a "vast terra incognita that courts should enter only upon necessity and only then by small degree." Id (internal citation omitted). Accordingly, for the reasons argued by Plaintiff in his Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, this Honorable court should find that the Plaintiff's Second Amendment rights were violated by the Chief's second decision denying Plaintiff a concealed carry permit.

### C. The Defendants' reliance on any local permitting policy is ultra vires, and expressly preempted by the Rhode Island Firearms Act.

Defendants' contention that the Town acted within its authority when promulgating rules for the issuance of permits is without merit and ignores both the plain language of R.I. Gen. Laws § 11-47-58 and the Rhode Island Supreme Court's interpretations of R.I. Gen. Laws § 11-47-11.  A municipal ordinance or policy is preempted by statute "when either the language in the ordinance contradicts the language in the statute or when the [General Assembly] has intended to thoroughly occupy the field."  *Coastal Recycling, Inc. v. Connors*, 854 A.2d 711, 715 (R.I.2004) (internal quotation marks omitted);  *see also URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 7 (1st Cir.2011) (applying principles of Rhode Island law regarding preemption); *Amico's Inc. v. Mattos*, 789 A.2d 899, 907 (R.I.2002).   See generally 1A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction §  30:1 at 658 (7th ed.2009).

As an agent of a municipality, the scope of a licensing authority's authority is wholly a function of state law.  In *Marro v. General Treasurer of City of Cranston*, 108 R.I. 192, 273 A.2d 660 (R.I. 1971), the Rhode Island Supreme Court held that a "municipal corporation, in the absence of a special constitutional provision, was a creature of the state having no inherent right of self-government and deriving all of its authorities and powers from its creator." *Marro*, 273 A.2d at 660 (citing *City of Providence v. Moulton*, 52 R.I. 236, 160 A.2d 75, (R.I. 1932)). Neither Rhode Island General Laws, Section 11-47-11 nor any other provision of the Firearms Act extends authority to local licensing authorities to issue regulations, policies, or other administrative gloss on the acts clear shall issue requirement and such action is expressly preempted by R.I. Gen. Laws § 11-47-58. Consequently, Defendants are utterly without the authority adopt a local policy that runs counter to the intent of R.I. Gen. Laws § 11-47-11 as

discussed in Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment.

## II.  CONCLUSION

For the foregoing reasons, and those argued in Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, which is incorporated herein by reference, Plaintiff asserts that there are no genuine issues of material fact left to be determined by trial of this matter, and that he is entitled to judgment as a matter of law. Accordingly, Plaintiff requests that the Honorable Court deny Defendants Motion for Summary Judgement and Grant Summary Judgment for the Plaintiff.

**Dated: 3/2/2016**                                           **Plaintiff, Jarren Ray Gendreau,**
                                                              **By and through his Attorney,**

                                                              **/s/Matthew L. Fabisch**
                                                              _____
                                                              **Matthew L. Fabisch**
                                                              **(R.I. Fed. Bar # 8017)**
                                                              **664 Pearl Street**
                                                              **Brockton, MA 02301**
                                                              **(Tel) 401-324-9344**
                                                              **(Fax) 401-354-7883**
                                                              **Email: Fabisch@Fabischlaw.com**

## CERTIFICATION

I hereby certify that on this 2nd day of March 2016, Memorandum of Points and Authorities in Support of Plaintiff's Objection to Defendants Motion to Dismiss was caused to be sent electronically through the CM/ECF system to the following:

Michael A. Ursillo, Esq.     mikeursillo@utrlaw.com, gwendolynbruno@utrlaw.com

/s/Matthew L. Fabisch