IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JARREN GENDREAU, : | |
|    *Plaintiff*, : | |
| : | |
| v. : | C.A. No.: 1:14-CV-00337-M-LDA |
| : | |
| TOWN OF BRISTOL, et. al., : | |
|    *Defendants.* : | |

**DEFENDANTS' MEMORANDUM IN REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    ARGUMENT**

    **A.  This matter is barred by <u>res judicata</u>.**

Gendreau contends that <u>res judicata</u> cannot attach because judicial review of permit applications under R.I. Gen. Laws § 11-47-11 comes via petition for writ of certiorari to the Rhode Island Supreme Court. <u>Gadomski v. Tavares</u>, 113 A.3d 387, 389 (R.I. 2015). While Gendreau is correct that the Rhode Island Administrative Procedures Act (hereinafter "APA") is inapplicable to permit applications under the Firearms Act, it is of no moment to the case at bar. The APA is not the source of <u>res judicata</u> or administrative finality—the common law created both. <u>See</u> <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979). As the Rhode Island Supreme Court recently wrote: "Our jurisprudence on this issue is quite firm. '<u>Res judicata</u> bars the relitigation of any issue that could have been litigated in a prior proceeding, including a direct appeal, that resulted in a final judgment between the same parties, or those in privity with them.'" <u>Martinez v. State</u>, 128 A.3d 395, 396 (R.I. 2015) (quoting <u>Hall v. State</u>, 60 A.3d 928, 932 (R.I. 2013)). All of the issues in this case could have been, and in fact were, litigated in a prior proceeding—via petition for writ of certiorari before the Rhode Island Supreme Court. By failing to amend his petition as ordered

by the Court, Gendreau waived his right to appeal and accepted Chief Canario's amended decision as a final decision like any other abandoned appeal.

Gendreau also makes note of the Rhode Island Supreme Court's use of the word "may" when providing Gendreau the ability to amend his petition. Gendreau conveniently failed to include, however, the beginning of the quoted sentence he relies upon in his brief. The full sentence read as follows: "This Court shall retain jurisdiction of this matter, and [Gendreau], *if aggrieved by [Chief Canario's amended] decision*, may invoke the Court's jurisdiction by filing an amended writ of certiorari in this same docket within thirty (30) days of the issuance of [Chief Canario's] decision." **Ex. D** at 2 (emphasis added)." Gendreau suggests by his edit that this Court should ignore the context of the full sentence, which shows that the Court's use of the word "may" meant nothing more than the ability of Gendreau to accept Chief Canario's amended decision as written and forfeit further judicial review. There is no basis for Gendreau's bizarre reading of this simple and clear order. The Rhode Island Supreme Court clearly intended to allow Gendreau to amend his petition if he were aggrieved. This, of course, is optional—plaintiffs are always free to abandon their causes of action, though in doing so, they forfeit their right to bring those actions again.

Gendreau also claims that his petition for writ of certiorari was directed at only the first decision and not the amended decision. This argument is somewhat perplexing because the amended decision exists *solely* because the Rhode Island Supreme Court, pursuant to its grant of Gendreau's petition for writ of certiorari, ordered Chief Canario to issue an amended decision. The petition and amended decision are inexorably linked, and in fact the sentence in the order permitting Gendreau to file an amended petition immediately follows the sentence ordering the new decision. **Ex. D** at 2.

**B. The issue in this case is not one of first impression within the First Circuit.**

Gendreau points out that in Powell v. Tompkins the First Circuit stated: "This circuit has yet to weigh in on 'the scope of the Second Amendment as to carrying firearms outside the vicinity of the home without any reference to protection of the home.'" 783 F.3d 332, 348 (1st Cir. 2015) (quoting Hightower v. City of Bos., 693 F.3d 61, 72 (1st Cir. 2012)). He curiously neglects to include,[1] however, the sentence immediately following that passage: "Thus far, we have held that any individual right 'in carrying concealed weapons outside the home is distinct from [the] core interest emphasized in Heller,' and that under Heller, '[l]icensing of the carrying of concealed weapons is presumptively lawful.'" Id. (quoting Hightower, 693 F.3d at 72-74 & n. 8). While Defendants do not argue that the First Circuit has expounded upon every possible application of the Second Amendment, the presumptive validity of concealed carry licensing schemes is undeniable. See id.

**C. Bristol's policy is not ultra vires, and the language of the preemption statute specifically allows for other sections of the chapter, such as § 11-47-11, to supersede the preemption provision.**

The state preemption statute to which Gendreau refers reads as follows: "The control of firearms, ammunition, or their component parts regarding their ownership, possession, transportation, carrying, transfer, sale, purchase, purchase delay, licensing, registration, and taxation shall rest solely with the state, *except as otherwise provided in this chapter*." R.I. Gen. Laws § 11-47-58 (emphasis added). The licensing authority must have discretion to determine who a "suitable person" is and what a "proper reason" is. R.I. Gen. Laws § 11-47-11. Without the ability to define those vague terms, the licensing authority would be unable to exercise its statutory

---

[1] Gendreau's characterization of Powell and this Circuit's Second Amendment jurisprudence are so grossly inaccurate as to border on misrepresentation. See 783 F.3d at 338; see also Hightower, 693 F.3d at 72-74.

obligations. The General Assembly purposefully vested licensing authority in the municipal governments, thus "otherwise provid[ing]" authority to the municipality. R.I. Gen. Laws § 11-47-58. If the General Assembly intended for concealed carry licensure to be "wholly a function of state law" as Gendreau contends, why then would the General Assembly involve municipalities at all? Why not simply leave the State Attorney General as the single route for licensure? That coupled with the vague nature of their charge implies broad discretion.

Defendants have never argued, as Gendreau suggests, that they may enact or adopt a policy that conflicts with § 11-47-11. Quite to the contrary, Defendants' policy is in harmony with both the text and purpose of § 11-47-11. By using vague terms that were not defined within the statute, the General Assembly provided the licensing authorities broad discretion to determine if the applicant for a permit is "suitable," and if the applicant has a "proper reason" to be licensed. See § 11-47-11. As the Rhode Island Supreme Court stated in Mosby v. Devine:

> "[T]he Legislature provided that an applicant for a license must show, for example, that he has a need or proper reason for carrying such a weapon, that he is qualified to use it, and that he is an otherwise suitable person. But to make those determinations, calls for an exercise of the fact-finding function which the Legislature obviously is in no position to supply. Hence, to give operative effect to the law and to prevent it from becoming a nullity required a delegation of authority which, in this instance, the Legislature made to those who by reason of their training and experience and the facilities at their command were probably more competent than any others to exercise the delegated power." 851 A.2d 1031, 1050 (R.I. 2004) (quoting State v. Storms, 112 R.I. 121, 127-28, 308 A.2d 463, 466-67 (1973)).

**II.   Conclusion**

For the foregoing reasons, this Court should deny Gendreau's motion for summary judgment, grant Defendants' motion for summary judgment, and find in favor of Defendants on all counts.

                DEFENDANTS,
                By and Through Their Attorney,

                /s/  Michael  A.  Ursillo
                Michael A. Ursillo, Esq. (#2676)
                Bristol Town Solicitor
                **URSILLO, TEITZ & RITCH, LTD.**
                2 Williams Street
                Providence, RI 02903
                Tel: (401) 331-2222
                Fax: (401) 751-2427
                Email: mikeursillo@utrlaw.com

**CERTIFICATION**

      I, the undersigned, hereby certify that on March 11, 2016, I caused a true copy of the within memorandum to be filed electronically with the Court's CM/ECF system with copies electronically forwarded to all counsel of record.

                                      /s/ Michael A. Ursillo

*\\SERVER\Share\Bristol\Litigation\Gendreau, Appeal to Supreme Court\Gendreau, Federal District Court\Summary Judgment\Reply Memo - Summary Judgement 3-11-2016.docx*