UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JARREN GENDREAU<br>    Plaintiff,<br>    v.<br><br>JOSUE D. CANARIO, in his capacity<br>as Chief of Police of the Bristol Police<br>Department; and the TOWN OF<br>BRISTOL, RHODE ISLAND<br>    Defendants. | C.A. No. 14-337-M-LDA |

## MEMORANDUM AND ORDER

JOHN J. McCONNELL, JR., United States District Judge.

Jarren Gendreau challenges the Town of Bristol's denial of his application for a permit to carry a concealed weapon. He alleges that the Town's policy, which requires a showing of need for a concealed carry permit, violates the Second Amendment. He also asserts that the Town's policy violates article 1, section 12 of the Rhode Island Constitution and section 11-47-11(a) of the Rhode Island General Laws. The Court holds that the Town's policy is permissible under the Second Amendment to the United States Constitution, but declines to exercise supplemental jurisdiction over any remaining state law claims.

## FACTS

The Rhode Island Firearms Act — R.I. Gen. Laws §§ 11-47-1 to -63 — first adopted in 1927, sets forth a comprehensive regulatory scheme governing the sale, licensing, possession, and use of firearms in Rhode Island. Relevant to this case, the

Firearms Act prohibits anyone[1] from carrying a pistol or revolver, visible or concealed, in any place other than the person's dwelling house, place of business, or on land possessed by him or her, unless that person has a license or permit issued pursuant to the Firearms Act. R.I. Gen. Laws § 11-47-8(a). A person may obtain a license of permit to carry a concealed weapon in public from a city's or town's licensing authorities. R.I. Gen. Laws § 11-47-11. The state statute requires that the licensing authorities of any city or town "shall" issue a concealed carry permit to an applicant who is 21 years of age or older, and meets the relevant residency requirements, "if it appears that the applicant has good reason to fear an injury to his or her person or property or has any other proper reason for carrying a pistol or revolver, and that he or she is a suitable person to be so licensed." *Id.*

Pursuant to the Firearms Act, the Town of Bristol has adopted a "Policy Regarding the Issuance of a License or Permit to Carry a Concealed Pistol or Revolver." ECF No. 23-1 at 4-7. As part of that policy, the Town evaluates "whether or not the applicant has demonstrated a proper showing of need to carry a loaded firearm in public." *Id.* at 5. The Town's policy states, in part:

> The Town of Bristol considers the following factors in assessing an applicant's proper showing of need.
>
> 1. Has the applicant demonstrated a specific articulable risk to life, limb or property? If so, has the applicant demonstrated how a pistol permit will decrease the risk?

---

[1] There are exceptions to this requirement, none of which is relevant in this litigation. *See, e.g.*, R.I. Gen. Laws § 11-47-9 (law enforcement officers, etc.).

2. Can the applicant readily alter his or her conduct, or undertake reasonable measures other than carrying a firearm, to decrease the danger to life, limb or property?

3. Are there means of protection available to the applicant other than the possession of a firearm that will alleviate the risk to his or her person or property?

4. Has the applicant demonstrated the skill, training and ability to properly use a firearm in accordance with Rhode Island laws?

5. Has the applicant presented a plan to properly secure the firearm so that it does not fall into unauthorized hands?

6. How greatly will the possession of a firearm by the applicant increase the risk of harm to the applicant or to the public?

7. Has the applicant demonstrated that he or she will not use the firearm for an unlawful or improper purpose, and that he or she has not used a firearm for [a]n unlawful or improper purpose in the past?

8. Does past unlawful, dangerous or violent conduct of the applicant justify denial of the license by the Town even if it is not sufficient to disqualify the applicant as a matter of law from possessing a firearm?

9. Has a protective order been issued relative to the applicant pursuant to chapter 15-5, chapter 15-15, or chapter 8-8.1 of the general laws?

10. Are there other factors deemed lawful and appropriate by the Town to demonstrate that the applicant is or is not a person suitable to possess a firearm in public?

*Id.* at 5-6.

Jarren Gendreau, a resident of the Town of Bristol, applied for a concealed weapon permit from the Town in February 2012. He asserted that he meets the Town's criteria for four reasons: first, he is an "avid firearms collector with over

$4,000.00 invested in both firearms and firearms accessories with a growing collection"; second, he is seeking employment in Massachusetts in the security industry, and having a permit in Rhode Island would allow him to get a permit in Massachusetts; third, he "occasionally deposit[ed] large sums of money (over $3,000.00) for [his] father, who owns an apartment complex and a curtain store in Fall River [, Massachusetts]"; and fourth, he "occasionally travel[s] with [his] father during business transactions. . . . sometimes carry[ing] up to $10,000.00, cash." Jarren Gendreau's Written Application, ECF No. 23-1 at 15.

The Bristol Chief of Police, Josue D. Canario, had appointed a board, pursuant to Town regulations, to make recommendations to him on the granting of concealed carry permits. At a hearing before the board, Mr. Gendreau explained his main reason for seeking a permit is that he is an avid gun collector. Board Meeting Transcript, ECF No. 23-2 at 4-6 ("the main reason is as I said [,] avid gun collector;" "like I said primary reason is avid gun collector;" "[b]ut those are all secondary, primary is avid gun collector"). The Town's board recommended that Chief Canario deny Mr. Gendreau's permit application. ECF No. 23-3. The Chief accepted the board's recommendation and denied the permit. ECF No. 23-4. The denial letter to Mr. Gendreau stated, "it is with regret that I advise you that I feel that you do not meet the criteria outlined in 11-47-11 of the General Laws of Rhode Island as amended, as well as Bristol Police Department's guidelines which would justify me issuing you a concealed weapons permit." *Id.*

Mr. Gendreau filed a writ of certiorari to the Rhode Island Supreme Court.[2] The court granted Mr. Gendreau's petition, because in the denial letter, Chief Canario did not "make the necessary findings to support his determination that [Mr. Gendreau] had failed to meet [the statute's criteria]." Order, *Gendreau v. Canario*, No. 13-55-M.P. (R.I. 2013), ECF No. 23-5 at 2. The court quashed the permit denial, directed the Town to issue a new decision on Mr. Gendreau's application supported by findings and conclusions within 90 days, and stated that it will retain jurisdiction over the matter, which Mr. Gendreau may invoke by filing an amended petition for writ of certiorari in the same docket within 30 days of the Town's new decision. *Id.* at 3.

In a letter dated October 16, 2013, Chief Canario issued a new decision, again denying Mr. Gendreau a permit, and delineating his reasons. Chief Canario wrote that Mr. Gendreau did not provide any convincing testimony that he has good reason to fear an injury to his person or property or has any other proper reason for carrying a pistol or revolver in public, as required by the Firearms Act. *See* ECF No. 23-6 at 2-3. Chief Canario concluded that "[i]n the event that you do become employed in a job which requires a concealed weapon permit and proof of the same is provided to me, I will reconsider a new application at that time." *Id.* at 3.

---

[2] The Town's denial is subject to review on certiorari by the Rhode Island Supreme Court. *See Mosby v. Devine*, 851 A.2d 1031, 1048 (R.I. 2004) ("the proper procedure for denial by a town council of a license application is by writ of certiorari to the Supreme Court" (citing *Krivitsky v. Town of Westerly*, 823 A.2d 1144 (R.I. 2003))).

Mr. Gendreau received the Town's decision on November 21, 2013. Pl.'s Statement of Undisputed Facts, ECF No. 17-2 at 7, ¶ 28. He never amended his writ of certiorari in the Rhode Island Supreme Court, and the court has subsequently closed his case. ECF No. 23-7. Almost a year later, Mr. Gendreau filed this lawsuit in federal court. Mr. Gendreau's amended complaint (ECF No. 11) asserts three counts,[3] specifically that the Town's policy violates the Second Amendment to the United State Constitution; article 1 section 22 of the Constitution of the State of Rhode Island; and § 11-47-11(a) of the Rhode Island General Laws. *Id.* at 10.

## ANALYSIS

### *Second Amendment*

The single federal constitutional question presented by Mr. Gendreau's complaint is whether the Second Amendment to the United States Constitution prohibits the Town from conditioning the grant of a permit to carry a concealed weapon outside of an individual's home, business, and land, on some showing of necessity for that permit by that individual. The answer to this question is no, the Town's regulation of concealed weapons in public does not infringe on the Second Amendment.

Mr. Gendreau's challenge invokes recent Supreme Court decisions on the Second Amendment, *D.C. v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010). In *Heller*, the U.S. Supreme Court ruled that a

---

[3] Mr. Gendreau's original complaint (ECF No. 1) contained only two counts, alleging violations of the federal and state constitutions.

"ban on handgun possession in the home violates the Second Amendment." *Heller*, 554 U.S. at 635.[4] However, the Court limited the scope of its ruling and specifically referenced the validity of long-standing prohibitions on carrying concealed weapons.

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose [citations omitted]. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues [citations omitted].

*Id.* at 626.

Post-*Heller*, the First Circuit set forth binding precedent that the government may constitutionally regulate the carrying of concealed weapons outside the home. *See Hightower v. City of Boston*, 693 F.3d 61 (1st Cir. 2012) ("Under [the First Circuit's] analysis of *Heller* . . . the government may regulate the carrying of concealed weapons outside of the home.")

"Together, *Heller* and *McDonald* establish that states may not impose legislation that works a complete ban on the possession of operable handguns *in the home* by law-abiding, responsible citizens for use in immediate self-defense." *Powell v. Tompkins*, 783 F.3d 332, 347 (1st Cir. 2015), *cert. denied*, 136 S. Ct. 1448 (2016) (emphasis added). However, the Town of Bristol's policy does not limit an individual's right to possess handguns *in the home*; it is only concerned with possession and use in the *public sphere*. On that issue, the First Circuit stated that firearm possession

---

[4] The Second Amendment rights enunciated in *Heller* where subsequently applied to the states. *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

regulation in "the public sphere context" does not "even reach the safe haven of the Second Amendment."[5] *Id.* The Town's policy does not invade Mr. Gendreau's Second Amendment rights.

"Laws prohibiting the carrying of concealed weapons" are an example of "longstanding," presumptively lawful restrictions, which "were left intact by the Second Amendment and by *Heller.*" *U.S. v. Rene E.*, 583 F.3d 8, 12 (1st Cir. 2009). Bristol's law conditioning permits for concealed weapons on a showing of need is well within the cadre of permissible "public welfare regulations aimed at addressing perceived inherent dangers and risks surrounding the public possession of loaded, operable firearms." *Powell*, 783 F.3d at 346; *see also Hightower*, 693 F.3d at 66-67, 71-83 (upholding Massachusetts' statute that restricts concealed weapons permits to suitable persons against Second Amendment challenge).

Mr. Gendreau's challenge to the Town of Bristol's concealed carry permit regulations, adopted pursuant to the Rhode Island Firearms Acts, fails. The Court finds no Second Amendment constitutional violation and grants judgment to the Defendants on Count One of Mr. Gendreau's complaint.

---

[5] Because *Powell* was a federal habeas case, the First Circuit was only concerned with clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). The court noted, however, that its own Second Amendment jurisprudence has "hewed closely and cautiously to *Heller*'s circumscribed analysis and *holding.*" *Powell*, 783 F.3d at 347 n. 9 (emphasis added). The court "flatly reject[ed]" the petitioner's position that *Heller* clearly established an individual's right to keep and bear arms unrelated to the home. *Id.*

*State Claims*

In addition to the federal constitutional challenge, Mr. Gendreau posits that Bristol's policy violates Rhode Island's Constitution and statutory law. Pursuant to 28 U.S.C. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over these state-law-only claims, now that the basis for federal question jurisdiction has been dismissed. The Court declines to hear and decide the state law claims for a number of reasons. First, while this matter is at the summary judgment stage of the litigation, it does not appear to the Court that the parties have done much pre-trial discovery on the specific issues involved in interpreting the state law matters. Second, the Rhode Island Supreme Court should have the opportunity to interpret its state constitutional provision and law as it relates to the Town's policy. *See Hightower*, 693 F.3d at 78-79 (expressing preference that a state's highest court has an opportunity to address these types of issues). Finally, it appears to this Court that the state court has already adjudicated this matter with finality. The Rhode Island Supreme Court retained jurisdiction over Mr. Gendreau's state case, and afforded him a full right to appeal an adverse decision by the Town. Order, *Gendreau v. Canario*, No. 13-55-M.P. (R.I. 2013), ECF No. 23-5 at 3. He chose not to amend his writ of certiorari before the Rhode Island Supreme Court after the Town explained its reasons for denying his permit. It would be improper for this Court at this stage, after the Rhode Island Supreme Court afforded Mr. Gendreau an opportunity to have these matters heard, to now step in and decide a matter of state law.

CONCLUSION

The Court holds that the Town of Bristol's policy regulating concealed carrying of weapons does not violate the Second Amendment to the United States Constitution. In addition, the Court declines to exercise supplemental jurisdiction over Mr. Gendreau's remaining state law challenges to the Town's policies. Therefore, the Court GRANTS Defendants' Motion for Summary Judgment (ECF No. 19), and DENIES Plaintiff's Motion for Summary Judgment (ECF No. 17). Defendants' Motion to Dismiss (ECF No. 15) is DENIED as moot in light of this Court's decision.

IT IS SO ORDERED:

_____
John J. McConnell, Jr.
United States District Judge

May 19, 2016